FILED

2026 MAR 26  PM 12: 31

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

BIANCA MCKINNEY,
43759 15th St W #84
Lancaster, CA 93534
661-570-9083
Biancamckinney92@gmail.com
Pro se
Plaintiff,

v.

LOUIS MOORE BACON;
MOORE CAPITAL MANAGEMENT, LP;
JESTAN SANDS (a/k/a Justin Sands a/k/a Jestan McKinney);
MARTIN D. SINGER;
LAVELY & SINGER PROFESSIONAL CORPORATION;
STEPHEN D. SHACKELFORD;
SUSMAN GODFREY L.L.P.;
THOMAS DALE ELFMONT;
THOMAS DALE & ASSOCIATES, INC.;
MICHAEL H. ARTAN;
and DOES 1–20,
Defendants.
Case No. **2:26-cv-01807-SVW-MAR**

**FIRST AMENDED COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF
(DEMAND FOR JURY TRIAL)**

JURISDICTION AND VENUE

(Civil RICO, 18 U.S.C. §§ 1962(c) & (d); Related State Law Claims)
Cal. Civ. Code §§ 51.7 (Ralph Act), 52.1 (Bane Act)
Intentional Infliction of Emotional Distress
Civil Conspiracy; Aiding and Abetting

Plaintiff Bianca McKinney alleges:

## PRELIMINARY STATEMENT

1. This action arises from a coordinated course of conduct directed at Plaintiff Bianca McKinney by an association-in-fact enterprise led by Defendant Louis Moore Bacon. The conduct included an unauthorized lawsuit filed in Plaintiff's name, conflict-tainted control of Plaintiff's legal matters, intimidation, concealment of material information, and the continuing online publication of false accusations about Plaintiff. Plaintiff alleges that this conduct caused concrete economic injury, including the loss in October 2025 of a recording and publishing opportunity valued at approximately $250,000.

2. Plaintiff alleges that Defendant Bacon directed, financed, benefited from, or advanced the enterprise through attorneys, investigators, intermediaries, and aligned actors.

**3.** Plaintiff alleges that the enterprise's purpose was to silence Plaintiff, control Plaintiff's legal position, impair Plaintiff's credibility, and interfere with Plaintiff's professional and economic opportunities.

**4.** Plaintiff does not seek to relitigate every prior proceeding touching these events. Plaintiff alleges independent acts, continuing conduct, concealment, intimidation, and newly accruing injury.

**5.** The clearest anchor events are: (a) the unauthorized 2011 lawsuit filed in Plaintiff's name without Plaintiff's consent; and (b) the October 2025 loss of a recording and publishing opportunity after the counterparty discovered continuing online accusations against Plaintiff and became concerned by the surrounding litigation conduct alleged herein.

**6.** The online publication remains publicly accessible and continues to interfere with Plaintiff's professional opportunities.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d).

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because substantial acts or omissions giving rise to these claims occurred in this District and Plaintiff suffered injury here.

10. Defendants' conduct affected interstate commerce through interstate communications, electronic court filing systems, internet publication platforms, and interference with Plaintiff's professional opportunities.

## PARTIES

11. Plaintiff Bianca McKinney is an individual residing in Kern County, California, with a Lancaster mailing address.

**12.** Defendant Louis Moore Bacon is an individual alleged to have directed, financed, benefited from, and coordinated the enterprise described herein.

**13.** Defendant Moore Capital Management, LP is an entity owned and controlled by Defendant Bacon and is alleged to have functioned as part of the structure through which Defendant Bacon provided financial support for and advanced the conduct described herein.

**14.** Defendant Jestan Sands is an individual who authored, maintained, controlled, and republished online material falsely accusing Plaintiff of prostitution and sex trafficking.

**15.** Defendant Martin D. Singer is an attorney associated with Defendant Lavely & Singer Professional Corporation and is alleged to have participated in the conflicted representation, settlement-related communications, and document-control conduct described herein.

**16.** Defendant Lavely & Singer Professional Corporation is a law firm involved in the representation and settlement-related conduct described herein.

**17.** Defendant Stephen D. Shackelford is an attorney alleged to have acted individually and/or through Defendant Susman Godfrey L.L.P. in the communications and litigation-related conduct described herein.

**18.** Defendant Susman Godfrey L.L.P. is a law firm alleged to have acted through its partners, attorneys, employees, and agents in the litigation-related conduct, communications, concealment, and intimidation described herein.

**19.** Defendant Thomas Dale Elfmont is an investigator associated with Defendant Thomas Dale & Associates, Inc.

**20.** Defendant Thomas Dale & Associates, Inc. is an investigative or security-related entity alleged to have acted through Defendant Elfmont and/or other agents or representatives in connection with the conduct described herein.

**21.** Defendant Michael H. Artan is an attorney who filed litigation in Plaintiff's name without Plaintiff's authorization.

5

22. Defendants DOES 1 through 20 are persons or entities presently unknown to Plaintiff who participated in the conduct alleged herein.

23. At all relevant times, each Defendant acted individually and/or through agents, partners, employees, representatives, or affiliated entities, and each entity Defendant acted through its officers, partners, employees, or agents. Plaintiff alleges that the individual and entity Defendants participated in the enterprise through distinct but coordinated roles.

24. Plaintiff sues both the individual Defendants and the entities through which they acted during the relevant period because Plaintiff alleges that the enterprise operated through both natural persons and organizational actors, and that the challenged conduct was carried out through those relationships.

## FACTUAL ALLEGATIONS

25. Plaintiff is a performer, recording artist, and songwriter whose professional opportunities and earning capacity involve interstate commerce.

6

26. In or about July 2011, Defendant Michael H. Artan caused a civil action styled McKinney v. Nygard, Los Angeles Superior Court Case No. BC464797, to be filed in Plaintiff's name.

27. Plaintiff did not authorize that filing, did not sign or verify the complaint, did not retain Defendant Artan for that action, and did not ratify the pleading afterward.

28. Plaintiff alleges that the 2011 filing contained allegations Plaintiff did not approve, including a false allegation that Plaintiff had been detained without her passport, and that the filing was transmitted through interstate electronic court systems and related communications.

29. Plaintiff further alleges that Defendant Artan later stated in sworn discovery responses or equivalent sworn statements that the filing had been made only as a "courtesy" to preserve limitations rather than pursuant to an executed retainer or verified client pleading, and that Plaintiff's information was routed to him through Stanley Arkin and/or the Arkin Group and Defendant Thomas Dale Elfmont. Plaintiff alleges that Stanley Arkin and/or the Arkin Group formed the link between Defendant Bacon, Defendant Elfmont, and Defendant Artan, showing that Artan

was not acting on Plaintiff's instructions through any authorized attorney-client relationship.

**30.** Plaintiff alleges that Defendant Thomas Dale Elfmont and Defendant Thomas Dale & Associates, Inc. participated in routing or handling Plaintiff's information in connection with the unauthorized filing, and that Artan identified Stanley Arkin and Thomas Dale Elfmont as part of the channel through which Plaintiff's information reached him.

**31.** Plaintiff further alleges that Defendant Louis Moore Bacon and Peter Nygard were engaged in ongoing litigation during the relevant period, and that the unauthorized filing in Plaintiff's name was used without Plaintiff's authorization in that broader dispute.

**32.** Plaintiff further alleges that contemporaneous 2008 travel records, sworn statements, and later-filed papers concerning the July 2008 events contradict later false narratives that Plaintiff had been detained without her passport or was engaged in prostitution or sex trafficking.

**33.** In or about Fall 2015, an individual identifying herself as Sarah "Sara" Ness contacted Plaintiff without prior appointment, stated that she was acting for

8

Palladino & Sutherland and that the firm had been retained by Defendant Bacon, transported Plaintiff to a lunch meeting, presented Plaintiff with a document captioned "Bianca McKinney v. Peter Nygard," and insisted Plaintiff had sued Peter Nygard, which Plaintiff denied.

34. Plaintiff further alleges that alcohol was provided and an Adderall pill was offered to Plaintiff during that meeting in connection with discussion of Plaintiff's litigation position.

35. Plaintiff alleges that this contact was part of an effort to influence Plaintiff's position and cooperation concerning matters involving Defendant Bacon and Peter Nygard.

36. On or about July 26, 2016, individuals identifying themselves as federal Homeland Security or HSI agents entered Plaintiff's residence in Northridge, California, displayed badges and business cards, and questioned Plaintiff about Peter Nygard under the pretense of a federal investigation.

37. Plaintiff alleges that the claimed federal authority was not verified and that the incident was an act of intimidation designed to frighten Plaintiff and deter Plaintiff from pursuing her rights.

38. Plaintiff alleges that this incident was contemporaneously documented and reported to counsel.

39. Between approximately October 27, 2016 and March 29, 2018, Defendants Martin D. Singer and Lavely & Singer Professional Corporation represented Plaintiff in related litigation matters.

40. Plaintiff alleges that during that same period Defendants Martin D. Singer and Lavely & Singer Professional Corporation were simultaneously aligned with, representing, or acting in coordination with interests associated with Defendant Bacon in the same or substantially related matters.

41. Plaintiff did not execute informed written consent authorizing representation adverse to Plaintiff's interests involving Defendant Bacon, and Plaintiff alleges that Defendant Bacon did not execute the mutual written consent necessary to authorize such concurrent or adverse representation.

**42.** Plaintiff alleges that no valid written conflict waiver authorized the conduct alleged here.

**43.** Plaintiff therefore alleges that acts undertaken during undisclosed and unwaived conflicted representation were unauthorized as to Plaintiff, materially impaired Plaintiff's legal position, and cannot be treated as binding admissions, waivers, or ratifications by Plaintiff.

**44.** Plaintiff further alleges that during this period Defendants Martin D. Singer and Lavely & Singer Professional Corporation controlled settlement communications, solicited information from Plaintiff, and controlled or restricted access to documents relevant to Plaintiff's claims.

**45.** Plaintiff alleges that on or about November 14, 2017, Defendant Singer transmitted an email of a draft settlement demand addressing Defendant Bacon's attorneys and that the draft included "claw-back" or similar language relating to the return or retrieval of documents.

**46.** Plaintiff alleges that settlement-related communications were used to steer Plaintiff away from pursuing claims involving Defendant Bacon and to suppress, retrieve, or control documents relevant to Plaintiff's claims.

**47.** Plaintiff does not allege that every filing made while Defendant Singer appeared as counsel was invalid for all purposes as a matter of law. Plaintiff alleges that, because Plaintiff did not provide informed written consent to the conflict involving Defendant Bacon, filings, positions, and strategic acts undertaken during that conflicted representation were not authorized by Plaintiff and should not be attributed to Plaintiff as her knowing or binding litigation choices.

**48.** Plaintiff further alleges that no informed written conflict waiver was executed by Plaintiff and Defendant Bacon for concurrent or adverse representation.

**49.** Plaintiff further alleges that Defendants associated with Lavely & Singer and Susman Godfrey controlled, withheld, retrieved, restricted, or blocked access to files and materials concerning Plaintiff, including materials relating to the unauthorized lawsuit filed in Plaintiff's name.

**50.** Plaintiff further alleges that Defendants' concealment and restriction of access to files and materials extended to records and proceedings bearing on authorization, privilege, sealing, and Plaintiff's access to information necessary to investigate her claims.

**51.** Plaintiff alleges that this conduct furthered the enterprise's objective of concealment and control and materially impaired Plaintiff's legal position.

**52.** Plaintiff further alleges that in or about April 2018 Defendant Stephen D. Shackelford communicated with Plaintiff in a manner invoking the "San Fernando Valley Peckerwoods" while pressing Plaintiff to disengage from claims involving Defendant Bacon, which Plaintiff understood in context as intimidation connected to the same course of coercive conduct.

**53.** Beginning no later than 2017, Defendant Jestan Sands authored, maintained, controlled, and republished an online publication accusing Plaintiff of prostitution and sex trafficking.

**54.** Plaintiff alleges that those accusations are false.

13

55. Plaintiff alleges that the publication was hosted, maintained, uploaded, promoted, or republished through internet platforms and interstate communications.

56. Plaintiff alleges that Defendant Sands affirmatively maintained and republished the publication through continued hosting, re-uploading, control, and refusal to remove it after notice of falsity, and that the publication remained publicly accessible as recently as late 2025.

57. Plaintiff alleges that the publication was intended to discredit Plaintiff, deter third parties from associating or contracting with Plaintiff, and reinforce the enterprise's efforts to silence and economically marginalize Plaintiff.

58. Plaintiff alleges that intimidation continued after the earlier litigation events and included indirect intimidation through third parties and family-related contacts, which reinforced Plaintiff's fear and need for protective measures.

59. Plaintiff further alleges that in or about August 2024 Paula Sanchez, a housing-related contact of Plaintiff, reported that an unidentified caller sought Plaintiff's

exact apartment location, which Plaintiff reasonably perceived as a continuation of prior intimidation and monitoring.

60. Plaintiff alleges that this inquiry reinforced Plaintiff's ongoing fear and safety concerns.

61. Plaintiff also alleges race-based intimidation connected to the same course of conduct, including racially charged graffiti and swastika imagery directed at Plaintiff, and communications invoking the "San Fernando Valley Peckerwoods," which Plaintiff reasonably understood in context as conveying a threat of violence if Plaintiff continued pursuing claims.

62. Plaintiff alleges that these acts were not isolated, but formed part of the same pattern of intimidation and coercion alleged throughout this complaint.

63. On or about August 17, 2025, Plaintiff reached an agreement in principle with music producer Joe N. Little III for an exclusive recording and publishing arrangement valued at approximately $250,000.

15

64. Plaintiff alleges that the opportunity arose from Plaintiff's own professional efforts and anticipated work in music and publishing.

65. On or about October 14, 2025, Joe N. Little III withdrew from the arrangement.

66. Plaintiff alleges that the withdrawal occurred after Joe N. Little III discovered the continuing online publication accusing Plaintiff of prostitution and sex trafficking and became concerned by the surrounding litigation conduct alleged herein, including the unauthorized lawsuit filed in Plaintiff's name and Defendant Bacon's litigation practices.

67. Plaintiff alleges that Joe N. Little III later confirmed in a sworn declaration that those matters caused him to abandon the opportunity.

68. Plaintiff alleges that the lost opportunity constitutes concrete injury to Plaintiff's business or property.

69. As a result of the conduct described above, Plaintiff alleges lost income, lost professional opportunities, interference with contracts and prospective economic

16

relationships, emotional distress, fear, and the need for protective measures affecting Plaintiff's housing, safety, and daily life.

70. Plaintiff further alleges that in 2017, after the conduct described above had begun and after Plaintiff filed the related state action, Plaintiff was diagnosed with an anxiety disorder for the first time. Plaintiff alleges this diagnosis as part of her damages and as evidence that Defendants' conduct caused concrete and continuing harm beyond the earlier events alone.

71. Plaintiff further alleges that records created after the conduct described herein reflect anxiety-related harm and ongoing medical consequences that Plaintiff pleads solely as damages and causation, not as separate medical claims.

### ASSOCIATION-IN-FACT ENTERPRISE

72. Plaintiff alleges that beginning no later than 2011, and continuing thereafter, Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

73. The enterprise consisted of individuals and entities coordinating their conduct as a continuing unit to control Plaintiff's legal position, suppress adverse information, intimidate Plaintiff, maintain false narratives about Plaintiff, and interfere with Plaintiff's professional and economic opportunities.

74. The enterprise had a common purpose, relationships among its members, and longevity sufficient to pursue its objectives.

75. Plaintiff alleges that Defendant Bacon acted as the principal directing or financing force behind the enterprise.

76. Plaintiff alleges that Defendant Moore Capital Management, LP, as an entity owned and controlled by Defendant Bacon, functioned as part of the financial structure through which Defendant Bacon supported and advanced the enterprise, and that the enterprise's coordinated conduct in turn caused Plaintiff's concrete business injury, including the October 2025 lost professional opportunity.

77. Plaintiff alleges that Defendant Artan participated by filing unauthorized litigation in Plaintiff's name.

78. Plaintiff alleges that Defendant Elfmont and Defendant Thomas Dale & Associates, Inc. participated by routing Plaintiff's information and assisting in conduct related to the unauthorized filing and related matters.

79. Plaintiff alleges that Defendant Singer and Defendant Lavely & Singer Professional Corporation participated by controlling Plaintiff's litigation position through conflicted representation, settlement pressure, and document control.

80. Plaintiff alleges that Defendant Shackelford and Defendant Susman Godfrey participated through coercive communications, concealment, and litigation-related conduct carried out through attorney and firm channels designed to protect Defendant Bacon and impair Plaintiff's rights.

81. Plaintiff alleges that Defendant Sands participated by authoring, maintaining, controlling, and republishing false online accusations that also damaged Plaintiff's reputation and professional opportunities.

82. Plaintiff alleges that the enterprise must be assessed as a whole because the challenged conduct was carried out through coordinated and mutually reinforcing

19

roles, while each Defendant nonetheless performed a distinct function in furthering the enterprise's common objectives.

## PATTERN OF RACKETEERING ACTIVITY

83. Plaintiff alleges that Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961 and 1962.

84. Plaintiff alleges that the individual and entity Defendants are RICO persons distinct from the association-in-fact enterprise through which they coordinated the conduct alleged herein.

85. The alleged acts included the unauthorized filing of litigation in Plaintiff's name, routing and use of Plaintiff's information without authorization, intimidation through claimed federal authority and other coercive acts, conflicted and obstructive litigation conduct, concealment or restriction of access to key materials, and continuing use of interstate communications to maintain false accusations that foreseeably caused direct economic injury.

20

**86.** Plaintiff alleges that these acts were related by common purpose, common victim, overlapping participants, and recurring methods.

**87.** Plaintiff alleges that the acts spanned multiple years and included continuing conduct threatening future harm.

**88.** Plaintiff alleges that the 2025 economic injury was a direct and foreseeable result of these continuing acts and of the enterprise's sustained effort to discredit and economically marginalize Plaintiff.

## STANDING, CAUSATION, AND TIMELINESS

**89.** Plaintiff alleges injury to business or property within the meaning of 18 U.S.C. § 1964(c), including the loss of a specific recording and publishing opportunity in 2025.

**90.** Plaintiff alleges a direct causal relationship between Defendants' conduct and that injury because the opportunity was withdrawn after Joe N. Little III discovered the continuing online accusations against Plaintiff and became concerned by the

21

surrounding litigation conduct alleged herein, including the unauthorized lawsuit filed in Plaintiff's name.

91. Plaintiff alleges that Plaintiff was the intended target of the conduct and that interference with third-party professional opportunities was a foreseeable and intended mechanism of harm.

92. Plaintiff further alleges that Defendants' conduct continued into 2024, 2025, and the present through continued publication, continuing accessibility of the defamatory material, continuing intimidation effects, and renewed location-related inquiry.

93. Plaintiff further alleges that in 2022 she relocated through housing placement after reporting ongoing safety concerns related to Defendants' conduct. Plaintiff alleges this relocation as part of the continuing effects of intimidation and as further support for delayed discovery, tolling, and the reasonableness of her fear in pursuing claims earlier.

94. Plaintiff alleges that this action is timely because it is based in substantial part on continuing and post-judgment conduct, including continued online publication,

continued intimidation effects, the 2024 location-related inquiry, concealment of

material information, and the newly accruing October 2025 economic injury.

Plaintiff does not rely on stale injury alone, but on later conduct, later injury, and

delayed discovery caused by concealment and intimidation.

95. Plaintiff further alleges that concealment and restrictions on access to records

bearing on liability, authorization, and damages contributed to delayed discovery

and tolling.

96. Plaintiff alleges that the October 2025 loss was a new and independently

significant injury to Plaintiff's business or property arising from continuing

conduct, and not merely the continued effect of an earlier dispute standing alone.

97. Plaintiff does not seek reversal of any prior judgment or to relitigate every

issue raised in prior proceedings. Plaintiff alleges that this action is based on

independent conduct, continuing conduct, concealment, and newly accruing injury

that were not fully adjudicated in prior proceedings and therefore are not barred

merely because related disputes existed earlier.

**98.** Plaintiff further alleges that the prior state action did not adjudicate the unauthorized 2011 filing in Plaintiff's name, the effect of undisclosed and unwaived conflicted representation, the continuing use of false online accusations as part of the enterprise's conduct, or the October 2025 loss of Plaintiff's recording and publishing opportunity. Plaintiff alleges that the prior state action was narrower in scope and did not resolve the fraud-based, conflict-based, and later-accruing injury allegations pleaded here.

## CAUSES OF ACTION

**COUNT ONE**

**Violation of 18 U.S.C. § 1962(c)**

**99.** Plaintiff realleges paragraphs 1 through 98.

**100.** Defendants, as persons distinct from the enterprise, knowingly conducted and participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

**101.** Defendants' conduct included the unauthorized filing of litigation in Plaintiff's name, routing and use of Plaintiff's information without authorization, intimidation through claimed federal authority and other coercive acts, conflicted control of Plaintiff's legal matters, concealment or restriction of access to key files and materials, and continuing use of interstate internet publication to maintain false accusations also causing business injury.

**102.** As a direct and proximate result, Plaintiff suffered injury to business and property, including the loss of the approximately $250,000 recording and publishing opportunity and related economic harm.

**COUNT TWO**

**Violation of 18 U.S.C. § 1962(d)**

**103.** Plaintiff realleges paragraphs 1 through 102.

**104.** Defendants knowingly agreed, expressly or tacitly, that one or more members of the enterprise would conduct the enterprise's affairs through a pattern of racketeering activity.

**105.** The agreement may be inferred from Defendants' coordinated roles, overlapping conduct, shared objectives, concealment, and complementary functions.

**106.** As a direct and proximate result, Plaintiff suffered injury to business and property, including the loss of the approximately $250,000 professional opportunity and continuing economic harm.

**COUNT THREE**

**Bane Act**

Cal. Civ. Code § 52.1

**107.** Plaintiff realleges paragraphs 1 through 106.

**108.** Defendants interfered with, attempted to interfere with, and coerced Plaintiff in the exercise of Plaintiff's rights by threats, intimidation, or coercion.

**109.** Such conduct included false-federal-agent intimidation, coercive and conflict-tainted litigation conduct, indirect intimidation, location-related monitoring or inquiry, and acts designed to force Plaintiff's silence and abandonment of rights.

**110.** Plaintiff was reasonably intimidated and coerced by this conduct and suffered economic loss, emotional distress, and interference with Plaintiff's ability to seek redress and pursue lawful employment.

## COUNT FOUR

**Ralph Act**

Cal. Civ. Code § 51.7

**111.** Plaintiff realleges paragraphs 1 through 110.

**112.** Defendants subjected Plaintiff to threats of violence or intimidation connected in part to Plaintiff's race, including racially charged graffiti, swastika imagery, and communications invoking the "San Fernando Valley Peckerwoods," which in context reasonably conveyed a threat of violence.

**113.** Plaintiff reasonably feared for Plaintiff's safety and took protective measures affecting housing, movement, and daily life.

## COUNT FIVE

**Intentional Infliction of Emotional Distress**

27

**114.** Plaintiff realleges paragraphs 1 through 113.

**115.** Defendants engaged in extreme and outrageous conduct, including unauthorized litigation in Plaintiff's name, intimidation through false authority, conflict-tainted legal control, concealment, and the deliberate maintenance and republication of false accusations designed to destroy Plaintiff's reputation and livelihood.

**116.** Defendants intended to cause emotional distress or acted with reckless disregard of the probability of causing such distress.

**117.** As a direct result, Plaintiff suffered severe emotional distress, fear, anxiety-related harm, disruption, and related damages.

**COUNT SIX**

**Civil Conspiracy**

**118.** Plaintiff realleges paragraphs 1 through 117.

**119.** Defendants agreed, expressly or tacitly, to engage in a common plan to silence Plaintiff, impair Plaintiff's credibility, interfere with Plaintiff's professional opportunities, and conceal material misconduct.

**120.** In furtherance of the conspiracy, Defendants committed overt acts described above, including unauthorized filings, witness-influence conduct, intimidation, concealment, conflict-tainted communications, and continued maintenance of false online accusations.

**121.** As a result, Plaintiff suffered economic loss, emotional distress, and other damages.

**COUNT SEVEN**

**Aiding and Abetting**

**122.** Plaintiff realleges paragraphs 1 through 121.

**123.** Each Defendant knowingly provided substantial assistance, encouragement, or support to one or more other Defendants in carrying out the wrongful acts alleged above.

**124.** Defendants knew, or reasonably should have known, that the conduct they were assisting was wrongful and part of a coordinated effort to silence and economically marginalize Plaintiff.

**125.** Defendants' substantial assistance was a proximate cause of Plaintiff's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bianca McKinney respectfully prays for judgment against Defendants, jointly and severally, as follows:

**1.** Compensatory damages according to proof, including lost income, lost opportunities, and damages arising from the October 2025 loss of the approximately $250,000 professional opportunity;

**2.** Damages for emotional distress and related harm according to proof;

30

**3.** Treble damages under 18 U.S.C. § 1964(c) for injury to Plaintiff's business or property caused by Defendants' racketeering conduct;

**4.** Punitive damages where permitted by law;

**5.** Declaratory relief that Plaintiff did not authorize or ratify the 2011 McKinney v. Nygard filing;

**6.** Injunctive and other equitable relief allowed by law to prevent continuing intimidation, harassment, surveillance, or improper direct contact with Plaintiff;

**7.** Costs of suit and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

**DECLARATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 26, 2026
at Lancaster, California.


/s/ Bianca McKinney
Bianca McKinney
Plaintiff, Pro Se
43759 15th St W #84
Lancaster, CA 93534
661-570-9083
Biancamckinney92@gmail.com

32